<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANDREA A. ANGERA, SR. | : |
|  | : Civil Action No. 2:14-cv-01253-SDW-MCA |
| Plaintiff, | : |
|  | : |
| v. | : **OPINION** |
|  | : |
| ANDREA A. ANGERA, JR. | : |
|  | : October 6, 2014 |
| Defendant. | : |

**WIGENTON**, District Judge.

Before this Court is Defendant Andrea A. Angera, Jr.'s ("Defendant") motion to dismiss Plaintiff Andrea A. Angera, Sr.'s ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a citizen of North Carolina and the father of Defendant. (Dkt. No. 1, Ex. A, Compl.) Defendant is a citizen of Massachusetts, with a residence in Connecticut, and is an attorney at law admitted to practice in New Jersey. (Certification of Andrea A. Angera, Jr. in Supp. of Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(6) ("Angera, Jr. Certification") ¶ 1.)

1

Plaintiff had been in the sausage and meat business since the 1950's and was operating that business with his brother, Anthony Angera, until his brother's death in December 2002. The business operated through partnerships and entities known as Angera Industries, Angera Pork Products, Angera Sausage, and Andy's Provision Company. (Compl. ¶ 3.)

In September 2003, Plaintiff closed his sausage and meat business and contemplated selling his business including real property located at 10 Squirrelwood Road in Woodland Park, New Jersey (the "Property"). (*Id*. ¶ 4.) Over the course of the following months, Plaintiff alleges that Defendant proposed several offers to buy the Property, but all offers were rejected. (*Id*. ¶¶ 6-8.) Plaintiff further alleges that in October 2003 the Property was appraised at $1,400,000.00. (*Id*. ¶ 5.)

In April 2004, Defendant allegedly made improvements to the Property at Plaintiff's expense, procured new tenants, and prepared written leases to aid Defendant's attempt to obtain financing to purchase the Property. (*Id*. ¶ 9.) In December 2004, Plaintiff alleges that Defendant advised him about T-Mobile's interest to construct a cell tower on the Property. (*Id*. ¶ 11.) Plaintiff further alleges that Defendant then told him that T-Mobile wanted the Property to be free from the interest of the Estate of Anthony Angera. (*Id*. ¶ 11.) On or about December 22, 2004, a deed was recorded by the Passaic County Clerk where the title to the Property was transferred from Plaintiff and the Estate of Anthony Angera to Angera Industries ("Deed"), allegedly backdated to December 31, 2003. (*Id*. ¶ 12.) However, Plaintiff asserts that there were several defects to the deed including: the deed was not signed on December 31, 2003, nor was it prepared or signed in the presence of Diana C. Scerbo, Esq. as indicated by the deed, and the attached Affidavit of Consideration and the Seller's Residency Certification were both signed by

Defendant. (*Id.* ¶ 14; *see* Certification of Pl., Angera, Sr. in Opp'n to the Mot. to Dismiss Pursuant to R. 12(b)(6) ("Angera, Sr. Certification"), Ex. C.)

In addition to the Deed, Plaintiff executed an "Assignment of Partnership Interest in Angera Industries" that purportedly assigned all of Plaintiff's rights, title and interests in Angera Industries to "parties as set forth upon the attached schedule"[1] which was later discovered by Plaintiff to be comprised of Defendant, Tikal Consulting Co., LLC and Confia Asset Management Series Trust, Series Alpha. (Compl. ¶ 15; *see* Angera, Sr. Certification, Ex. D.) Plaintiff alleges this document was also backdated to December 31, 2003. (Compl. ¶ 15.)

In January 2005, Defendant reopened the sausage and meat plant at the Property without Plaintiff's authorization. (Compl. ¶ 17.) On or about August 8, 2005, Plaintiff alleges that he became aware of two recorded mortgage on the Property in the name of Angera Industries, executed by Defendant and his wife, also without Plaintiff's authorization. (*Id.* ¶ 10.) The first was a mortgage for $220,000.00 obtained from Pure Performance on November 29, 2004, and the second was a mortgage for $485,000.00 obtained from Pamrapo Savings Bank. (*Id.* ¶¶ 19, 20.) Plaintiff claims that he immediately demanded Defendant vacate the building, cease operation, and remove the mortgages from the Property. (*Id.* ¶ 21.)

Plaintiff further alleges that, on or about December 22, 2005, while he was under duress and coerced,[2] he and Defendant executed an agreement ("Agreement").[3] (*Id.* ¶ 36; Angera, Sr. Certification, Ex. A, Agreement.) The Agreement provides that Plaintiff would surrender all rights including the real property, intellectual property, and equipment in Angera Industries,

---

[1] Plaintiff claims that he was not provided with the schedule at the time of signing and that Defendant provided the schedule on August 11, 2005. (Compl. ¶¶ 15, 24.)

[2] Plaintiff alleges that Defendant made threats to challenge the validity of the will of Anthony Angera, had emailed Plaintiff copies of New Jersey's forgery statute and threatened to file criminal charges against Plaintiff. (Compl. ¶¶ 29-36.)

[3] This Agreement is often referred to in the parties' papers as the "Settlement Agreement."

Angera Pork Products, and Andy's Provision Company to Defendant for the consideration of $850,000.00. (*Id.* ¶ 36; Angera, Sr. Certification, Ex. A, Agreement.) According to the terms of the Agreement, the first payment of $550,000.00 was due and payable on or before December 31, 2006, with the remaining balance of $300,000.00 plus interest due and payable on or before December 31, 2012. (Angera, Sr. Certification, Ex. A.) The governing law of the Agreement is the law of New Jersey. (*Id.*)

On or about March 31, 2006, Defendant, via his ownership of Angera Industries, sold the Property for a sum of $1,800,000.00. (Notice of Removal, Ex. C "Deed".) On December 31, 2006, Defendant made a payment of $55,000.00 to Plaintiff alleging that the payment was partial fulfillment of the terms of the Agreement. (Angera, Sr. Certification, Ex. P.)

In addition to the Agreement, Plaintiff alleges that from 1986 to 2003, Plaintiff has made numerous loans, due upon demand, to Defendant totaling $131,455.63.[4] (Compl. ¶ 2; Angera, Sr. Certification, Ex. B.) Plaintiff also alleges that Defendant owes an outstanding debt of $15,000.00 stemming from a $21,000.00 loan made on July 15, 2005. (Compl. ¶ 18.) Plaintiff claims to have made demands to Defendant for the sum owed pursuant to the Agreement in January and February of 2008. (*Id.* ¶ 41.)

On or about June 17, 2013, Plaintiff filed a three-count Complaint against Defendant in the Superior Court of New Jersey, Passaic County alleging breach of contract, unjust enrichment, and constructive trust,[5] while demanding repayment of "all outstanding loans in the amount of $962,445.63 together with interest, prejudgment interest, attorneys' fees, cost of suit and such

---

[4] The details of these loans, separate from the Agreement, were not provided in the Complaint. (*See* Compl.)
[5] Regardless of Plaintiff's pleading, a "constructive trust" on proceeds and profits is not a cause of action, and he appears to be a seeking a remedy that would include the imposition of a constructive trust. (*See* Compl.)

other relief as the Court deems just and equitable."[6] (Dkt. No. 1, Compl. ¶ 47.) On or about February 25, 2014, this matter was removed from the Superior Court of New Jersey, Passaic County to the District Court for the District of New Jersey. (*Id.*)

On or about March 18, 2014, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). (Dkt No. 4.) On or about April 17, 2014, Plaintiff opposed Defendant's Motion to Dismiss. (Dkt No. 6.) On or about April 27, 2014, Defendant filed a reply. (Dkt No. 11.)

## II.  LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rules of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "'requires a 'showing' rather than a blanket assertion of an entitlement to relief'" (quoting *Twombly*, 550 U.S. at 555 n.3)).

In considering a Motion to Dismiss under Federal Rules of Civil Procedure (b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche*

---

[6] Plaintiff demands judgment of $962,445.63, but does not provide a complete breakdown. (*See* Compl. ¶ 47.) This amount appears to be the total of the $850,000 with interest owed under the Agreement, plus the amounts of "other loans," minus Defendant's payment of $55,000. (*See* Compl. ¶¶ 2, 18, 47.) Plaintiff notes that he "has continuously demanded that the Defendant pay the $850,000.00 due to Plaintiff pursuant to the [Agreement] as well as the other loans and the Defendant has refused to pay. . ." (Compl. ¶ 47.) As discussed further herein, to the extent that the alleged breach of these "other loans" occurred prior to 2007 they will not be considered by this Court.

*Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2).  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (second alteration in original) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (3d Cir. 2009).  First, the court must separate the factual elements from the legal conclusions.  *Id.*  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678).  Second, the court must determine if "the facts alleged in the complaint are

6

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679).

### III.    DISCUSSION

The interpretation of a contract is a matter of law for the court. *Atlantic City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000).   The essential elements of a cause of action for breach of contract are a valid contract, defective performance by defendant, and resulting damages.  *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985).  Under New Jersey law, the statute of limitations for breach of contract is six years and a cause of action accrues when a plaintiff knows or should know of its existence.   N.J. Stat. Ann. § 2A:14–1; *see also Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir.1989). The statute of limitations with regard to the unjust enrichment claim is also six years. *See Jacobson v. Celgene Corp.*, No. 09-4329, 2010 WL 1492869 (D.N.J. 2010); *Baer v. Chase*, 392 F.3d 609, 621-22 (3d Cir. 2004) (applying six year statute of limitations to quasi-contract claims).

A party may assert an affirmative defense regarding the expiration of a statute of limitations when it may be invoked on the face of the complaint. *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). When considering the accrual of the statute of limitations, the alleged infraction and the repudiation of future performance should be considered.  *See Beeson, Inc. v. Coca Cola Co., et al.*, 337 Fed. Appx. 241, 244 (3d Cir. 2009) ("A single infraction of contractual obligations, such as a missed payment, is insufficient to constitute a 'total breach' of the agreement unless accompanied by an anticipatory repudiation of future performance . . . a combination of an act deliberately repudiating the agreement and an act indicating to the non-breaching party that any future performance either will not occur or will not be in compliance with the contract terms commences the running of the statute of limitations.").

In the instant matter, the parties agree on the applicable six-year term of the statute of limitations, but disagree on the date of accrual.[7] Defendant acknowledges the Agreement, but claims that the loans were all for years well exceeding the statute of limitations and are time barred. Specifically, Defendant argues that "[t]he verbal loans would have defaulted as long as twenty-eight (28) years before the filing of the complaint, and the Settlement Agreement over six and one half (6 ½) years before the filing of the complaint." (Def.'s Br. 9.)[8] Further, Defendant asserts that Plaintiff does not claim he was unaware of any purported breach by Defendant, and Plaintiff was aware of the default after only a partial payment was made in December 2006, so the statute of limitations has run.

Plaintiff asserts that the statute of limitations began to accrue on December 31, 2012, when the entire amount under the contract was due under the Agreement. (Pl.'s Opp'n 7.) Plaintiff argues that Defendant's partial payment of $55,000 did not accelerate the entire amount due under the contract to December 2006, nor trigger a cause of action for breach of contract. (*Id.* at 8.)

The Agreement was for payment in installments, and Defendant indicated with the partial payment that he intended to continue to pay (or at least did not indicate that he would not pay). (*See* Pl.'s Opp'n Br. 3.) Plaintiff accepted the partial payment under those circumstances, but the entire sum was not yet due. Thus, Plaintiff may still pursue the amount owing as of the second installment due December 2012 (that is $850,000 less the $55,000 payment).

---

[7] This matter is essentially one for breach of contract; however, other issues are raised and Defendant asserts that Plaintiff made threats to himself and his family. (Def.'s Br. 6.) Defendant makes several other allegations against Plaintiff regarding a "personal vendetta" which are beyond the scope of this Court's analysis of the pleadings. (*Id.*) At this stage, this Court focuses on the pleadings and views them in the light most favorable to Plaintiff as is required.

[8] This statement refers to the "other loans" mentioned in the Complaint, in addition to the Agreement. (*See* Compl. ¶ 2.)

Based on the foregoing, this Court finds that the statute of limitations has not run. The statute of limitations for both the breach of contract and the unjust enrichment claim began to run in December 2012. Plaintiff may pursue the remaining amount due under the Agreement.

Finally, the claims for "other loans" prior to 2007 that are alluded to in the Complaint, are outside the statute of limitations and are not viable as presented. (Compl. ¶¶ 2, 47.) Plaintiff demands judgment of $962,445.63, but does not provide a complete breakdown for this sum. (*See* Compl. ¶ 47.) It is unclear which specific loans or verbal loans Plaintiff is referring to with the requested demand. (*See, e.g.,* Compl. ¶ 47.) To the extent that the alleged breach of loans outside the Agreement occurred prior to 2007, they are time barred.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**.

s/Susan D. Wigenton, U.S.D.J.

Orig:      Clerk
cc:        Parties
           Magistrate Judge Mannion